IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LORI TULLOS and VIRGINIA S. MCFADDIN, | : : : | |
| Plaintiffs, | : : | |
| v. | : : : | CIVIL ACTION NO. 1:24-CV-04625-LMM |
| BRAD RAFFENSPERGER, *in his official capacity as the Georgia Secretary of State*, | : : : : : : | |
| Defendant. | : : | |

**ORDER**

This case comes before the Court on Plaintiffs' Motion for Emergency Temporary Restraining Order [2]. After due consideration, the Court enters the following Order:

**I.   BACKGROUND**

This case involves Georgia's ballot for the upcoming presidential election. Plaintiffs allege that Defendant is attempting to remove President Joseph R. Biden from Georgia's ballot in violation of federal and state law. Dkt. No. [1]. In support of this contention, Plaintiffs claim that President Biden received 95% of the votes in a presidential primary election. Dkt. No. [2] ¶ 5. Plaintiffs seek a temporary restraining order ("TRO") enjoining Defendant from removing President Biden from the ballot. Id. ¶¶ 16–17.

**II.    LEGAL STANDARD**

To obtain a TRO or preliminary injunction, the moving party must demonstrate "(1) a substantial likelihood of ultimate success on the merits; (2) the TRO is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the TRO would inflict on the non-movant; and (4) the TRO would serve the public interest." <u>Ingram v. Ault</u>, 50 F.3d 898, 900 (11th Cir. 1995); <u>Parker v. State Bd. of Pardons & Paroles</u>, 275 F.3d 1032, 1034–35 (11th Cir. 2001). A temporary restraining order "is an extraordinary and drastic remedy that should not be granted unless the movant clearly carries its burden of persuasion on each of these prerequisites." <u>Suntrust Bank v. Houghton Mifflin Co.</u>, 252 F.3d 1165, 1166 (11th Cir. 2001) (per curiam).

Additionally, the Court recognizes that Plaintiffs are appearing *pro se*. Thus, Plaintiffs' Motion is more leniently construed and "held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (citation omitted); <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam). But nothing in that leniency excuses a party from complying with threshold requirements of the Federal Rules of Civil Procedure. <u>See</u> <u>Moon v. Newsome</u>, 863 F.2d 835, 837 (11th Cir. 1998). Nor does this leniency require or allow courts "to rewrite an otherwise deficient pleading [by a *pro se* litigant] in order to sustain an action." <u>GJR Invs., Inc. v. Cnty. of Escambia</u>, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by* <u>Iqbal</u>, 556 U.S. 662.

## III. DISCUSSION

In their Motion, Plaintiffs seek an injunction preventing Defendant from printing or approving Georgia's general-election ballots without President Biden as an available candidate. Dkt. No. [2]. In support of this request, Plaintiffs argue that removing President Biden from the ballot is illegal for three reasons: (1) Georgia law requires President Biden to file a "notarized affidavit of withdrawal" and he has failed to do so; (2) Georgia law requires the presidential candidate with the most votes in a primary election to be listed on the ballot; and (3) removing President Biden from the ballot would violate Plaintiffs' constitutional rights. Id.

The Court finds that Plaintiffs have not shown a substantial likelihood of success on the merits. See Parker, 275 F.3d at 1035. Of the four factors required for temporary injunctive relief, likelihood of success on the merits is "generally the most important." Gonzalez ex rel. Gonzalez v. Reno, No. 00-11424-D, 2000 WL 381901, at *1 (11th Cir. Apr. 19, 2000); see also Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1226 (11th Cir. 2005) ("Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion.").

Here, Plaintiffs' position—that President Biden cannot or has not legally withdrawn from the general presidential election after winning the presidential preference primary—is not likely to succeed on its merits. Georgia law contemplates that, even after a presidential preference primary, a national political party will select its presidential candidate at a nominating convention. See

3

O.C.G.A. § 21-2-195 (requiring the "state executive committee of each political party or body" to determine the procedures by which delegates for the national nominating conventions will be selected); see also Stuckey v. Richardson, 372 S.E.2d 458, 460 (Ga. Ct. App. 1988) ("The vital business of the Convention is the nomination of the Party's candidates for the offices of President and Vice President of the United States." (quoting Cousins v. Wigoda, 419 U.S. 477, 489–90 (1975))); O.C.G.A. § 21-2-191 (authorizing a presidential preference primary "so that the electors may express their *preference* for one person to be the candidate for nomination by such person's party or body for the office of President of the United States" (emphasis added)); Duke v. Cleland, 954 F.2d 1526, 1527 (11th Cir. 1992) ("Political parties participating in Georgia's primary may establish their own rules regarding the selection of delegates to nominating conventions." (citing O.C.G.A. § 21-2-195)). Georgia law also provides that, in the event that a candidate "withdraws after being entitled to delegate votes," unpledged delegates will ultimately decide the party's nominee at the nominating convention. See O.C.G.A. § 21-2-197. Thus, rather than binding a candidate to the results of a presidential preference primary, Georgia law contemplates that a national political party will choose its presidential candidate at its national convention.

Plaintiffs' reliance on other Georgia statutes is misplaced. Although Plaintiffs suggest that President Biden cannot withdraw from the presidential race without filing a "notarized affidavit of withdrawal" with the Secretary of State, Dkt. No. [2]

¶ 5, Plaintiffs omit important qualifications on this statutory requirement. In proper context, the statute provides that:

> A candidate nominated at any primary election or nominated by means other than a primary may withdraw as a candidate at the ensuing general election by filing a notarized affidavit of withdrawal with the Secretary of State, if nominated for a state office; the county superintendent if nominated for a county office; or the municipal superintendent, if nominated for a municipal office.

O.C.G.A. § 21-2-134(a)(1). Notably, the statute only applies to candidates for state, county, or municipal office—not candidates for President of the United States.[1] Plaintiffs cite no other authority for their position that a presidential candidate must file a notarized affidavit to withdraw from an election before the candidate is officially nominated at a party's national convention. See Dkt. No. [2]. Thus, Plaintiffs have not shown that President Biden failed to follow the proper procedure to withdraw from the presidential election.

Similarly, Plaintiffs have not demonstrated that the results of the presidential primary election bar President Biden from withdrawal. Plaintiffs argue that, because President Biden received a majority of votes in a party's presidential primary election, he is the only authorized candidate from his political party and therefore cannot withdraw from the election. Dkt. No. [2] ¶¶ 5–7 (quoting O.C.G.A. § 21-2-501). But the statute cited by Plaintiffs provides only that "no candidate

---

[1] Even if the statute applied to presidential candidates, it does not apply unless the candidate has already been nominated—by means of a primary or otherwise. Here, Plaintiffs have not alleged that any political party officially nominated President Biden as a presidential candidate. See Dkt. Nos. [1, 2].

shall be nominated for public office . . . unless such candidate shall have received a majority of the votes cast to fill such nomination or public office." O.C.G.A. § 21-2-501(a)(1). Even assuming this statute applies to a presidential preference primary, the statute says nothing about a candidate's ability to withdraw from a general election. At most, the statute imposes prerequisites for candidates to be *included* on the ballot—not a bar to *removing* candidates from the ballot. Because Plaintiffs are challenging only the removal of President Biden from the ballot, O.C.G.A. § 21-2-501(a)(1) is inapposite and does not support Plaintiffs' likelihood of success on the merits.[2] Plaintiffs cite no other authority for their position that a presidential candidate who receives a majority of votes in a primary election cannot legally withdraw from the ballot before the candidate is nominated at the party's national convention. See Dkt. No. [2]. Thus, Plaintiffs' argument is not likely to succeed on its merits.

Finally, Plaintiffs argue that removing President Biden from the ballot violates their constitutional rights. But Plaintiffs cite only to the general principle that voting and free speech are fundamental rights. See Dkt. No. [2] ¶¶ 7–9, 12. Although Plaintiffs are correct about the existence of these fundamental rights, Plaintiffs do not cite any case law supporting their specific position: that a

---

[2] For the same reasons, Plaintiffs' reliance on O.C.G.A. § 21-2-501(f) is misplaced. The statute requires that candidates (except presidential electors) receive a majority of votes cast in a general election to fill a public office. O.C.G.A. § 21-2-501(f). However, the statute is silent on a candidate's ability to withdraw from a general election after receiving a majority of votes in a primary election.

6

presidential candidate is constitutionally required to remain on the general-election ballot after receiving a majority of votes in a primary election. Indeed, Eleventh Circuit precedent undermines Plaintiffs' position. See Duke v. Massey, 87 F.3d 1226, 1234 (11th Cir. 1996) (noting that the right to associate does not include the right to associate with an "unwilling partner"); see also Cleland, 954 F.2d at 1531 (finding that "the right to vote for a particular candidate" was entitled to less constitutional weight than the "absolute right to vote" because removing the candidate from the ballot would not totally foreclose votes for the candidate in the general election). Thus, Plaintiffs have not shown that their constitutional claims are likely to succeed.

In sum, Plaintiffs have not satisfied their burden of showing a substantial likelihood of success on the merits. At this early stage of litigation, Plaintiffs' cited authority does not persuade the Court that Defendant's removal of President Biden from Georgia's general-election ballot is illegal. The Court therefore denies Plaintiffs' Motion.

## IV. CONCLUSION

In accordance with the foregoing, Plaintiffs' Motion for Emergency Temporary Restraining Order [2] is **DENIED**.

**IT IS SO ORDERED** this 16th day of October, 2024.

**Leigh Martin May**
**United States District Judge**